[No. 13728.    Department One. — November 21, 1890.]

JOHN WOLFSKILL, APPELLANT, *v.* THE COUNTY OF LOS ANGELES ET AL., RESPONDENTS.

DEDICATION OF STREETS AND HIGHWAYS — RECORDED MAP — OFFER AND ACCEPTANCE. — The filing and recording of a map is but an offer of dedication of the streets and highways delineated thereon; and in order to constitute a dedication which can be taken advantage of by the public authorities, the offer of dedication must have been accepted by them, either by user or by some formal act of acceptance.

ID. — LIMITATION OF ACCEPTANCE TO PARTICULAR STREETS. — The acceptance, by user or otherwise, of one or more particular streets or highways shown upon a recorded map will not operate as an acceptance of all or any other of the streets or highways delineated thereon.

ID. — TIME FOR ACCEPTANCE — REVOCATION OF OFFER — EFFECT OF ACCEPT-ANCE. — The acceptance of a street dedicated to the public must be within a reasonable time after the offer of dedication, and if not accepted, the owner may resume the possession of the property, and thereby revoke his offer; but the offer cannot be withdrawn, if the public accepted it within a reasonable time, before any attempt to withdraw it, or to make any use of the property offered other or different from that made when the offer was recorded.

ID. — ACTS OF ACCEPTANCE BY PUBLIC AUTHORITIES — EVIDENCE. — Publicly dealing with property dedicated as a highway, widening, extending, and grading it, changing its name, and the like, are acts tending to prove acceptance by the public authorities; and evidence of such acts, if uncontradicted, is sufficient to establish an acceptance of the dedication, although no formal resolution of acceptance was passed by the board of supervisors.

ID. — RIGHT OF PURCHASER TO DEDICATE STREETS — CONSTRUCTION OF CONTRACT OF SALE — IMPAIRMENT OF VENDOR'S INCLOSURE. — Where a large tract of land is sold upon installments, with the express understanding that upon the making of the first deferred payment the vendee should have the right to subdivide the same into smaller tracts, with streets and roads upon and through the same, and to make and record maps thereof, etc., and the contract contains a clause which provides that the "inclosures of the party of the first part shall be left practically unimpaired," the removal of the position of a fence so as to place without, instead of within, the inclosure a strip of land along the westerly line of the tract, which had been appropriated as a public highway, as contemplated by the contract, is not a "practical impairment" of the inclosure, if the fences are otherwise left intact and the inclosure of the tract remains complete.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Smith, Winder & Smith,* for Appellant.

*Frank P. Kelly,* and *Houghton, Silent & Campbell,* for Respondents.

Fox, J. — This is an action for the recovery of the sum of five thousand dollars damages for trespass *quare clausum fregit,* and praying for an injunction perpetually restraining the defendants from further trespass, and from laying out and opening a public highway on lands claimed by plaintiff. Defendants had judgment, from

which, and an order denying plaintiff's motion for new trial, plaintiff appeals.

It seems, from the pleadings, findings, and evidence in the cause, that the plaintiff was the owner of a tract of land situate in the county of Los Angeles, consisting of 4,387 acres, known as the Rancho San José de Buenos Ayres. On the 27th of May, 1887, he entered into a contract with J. W. Hoyt for the sale of said tract for the sum of four hundred and thirty-eight thousand seven hundred dollars. This was to be paid in installments: one thousand dollars down; thirty-seven thousand seven hundred dollars on or before July 1, 1887; one hundred thousand dollars on or before January 25, 1888; one hundred and fifty thousand dollars on or before July 25, 1888; and the balance, one hundred and fifty thousand dollars, on or before July 25, 1889, with interest at the rate of six per cent per annum on deferred payments from June 25, 1887.

It was further provided in the agreement, "for the purpose of enabling the said second party to subdivide and resell said land, the said second party shall have the right, after the payment due July 1, 1887, is made, to enter upon said land for the purpose of making surveys, constructing roads, developing and piping water, and making other improvements, provided that the inclosures of the party of the first part shall be left practically unimpaired."

It was further agreed that the plaintiff should execute deeds of conveyance of lots and subdivisions of the tract as sales were made (a minimum price being fixed at which different portions thereof should be sold), the sales to be made for not less than one third cash, the balance to be secured by mortgage upon the portion sold, plaintiff to receive the cash, and credit the same on his contract, and also to receive the notes and mortgages given by purchasers, and when they were paid, to also credit the amount on his said contract. As to the pay-

ment due July 1, 1887, time was made of the essence of the agreement.

It was also "further understood and agreed that the party of the first part shall remain in possession of the said ranch until the full payment of installments of the purchase-money, to be paid, on or before July 25, 1888, as above stipulated, excepting such portions as may be conveyed to purchasers, as above agreed, or such portions as may be appropriated to roads or other improvements, as above stipulated, and shall receive the rents and profits thereof for his own use and benefit."

It is conceded that the payment due July 1, 1887, was made according to contract. On the 28th of that month, Hoyt conveyed all his interest in the land and in the contract to the Los Angeles and Santa Monica Land and Water Company, a corporation. This was done with the knowledge and in the presence of the plaintiff, and he thereafter dealt with the company as his contract vendee. Upon receiving this transfer, the company proceeded to carry out the purpose for which the contract was evidently made, and to exercise the powers conferred by the contract, of subdividing and laying off the land, making improvements and sales, etc. In the exercise of this power it made two maps, and placed the same of record, — one of a town site, situate in about the center of the tract, called Sunset, and the other of the lands embraced in the tract, and lying outside the town site, these outside lands being divided into subdivisions varying in size from one acre to seventy-five acres, and the tract being so intersected into streets and roads that every subdivision had at least one frontage upon some street, road, or avenue.

The company also published and distributed a lithograph map combining the two maps, and showing the entire tract as subdivided and laid off by and upon the two maps so made matter of record. To what extent, if any, it made other improvements upon the land

does not appear, and is unimportant for the purposes of this case. It did make a large number of sales of different subdivisions, and the plaintiff, at its request, and in pursuance of the terms of the contract, made conveyances to the number of one hundred or more, receiving the cash payments made thereon, and crediting the same on the contract, and also receiving the notes and mortgages of purchasers, and holding them as collateral to his contract, as therein provided. He also himself became a purchaser from the company of lots to the amount of forty-seven thousand dollars, and accepted the company's deed for the land, crediting the amount upon his contract. All the conveyances so made and united in by him, and that accepted by himself, described the property conveyed by lots, blocks, and numbers, and as bounded by streets, as laid down on the recorded maps above mentioned. He also accepted from the company a conveyance of several parcels of the outside lands of the tract, described according to the said outside map, and gave a declaration and certificate acknowledging and declaring that the same had been conveyed by him in trust, and that he held the same, in trust, as security for the payment of one hundred thousand dollars agreed to be contributed by the company to the National Soldiers' Home, an institution located on a tract adjoining said rancho, and the payment of which contribution had been guaranteed by him.

The payment of one hundred thousand dollars, due January 25, 1888, with the interest, was duly made; but the company was unable to meet its subsequent payments as they fell due, and the plaintiff entered into supplemental agreements with it, extending the time of such payments, and subdividing the same, and acknowledged the receipt of divers sums on account of such subsequent payments. Several roads, streets, and avenues were laid down on the recorded map of said outside lands, or what is called the Acre Subdivision

of said tract, and, among others, one sixty feet wide along the entire length of the western boundary thereof, from the northern to the southern boundaries, called Pacific Avenue, and the land fronting on the same was laid off into subdivisions varying from ten to upwards of seventy acres each in extent. All the lands fronting on this avenue were sold and conveyed according to the map, and in the manner above indicated.

At the date of the contract, and up until the date of the alleged trespasses of defendants, the entire tract was substantially inclosed, and the defendant lived on it, in full view of everything that was being done on the tract. When the plats were made, the land was surveyed and laid off on the ground as the same was shown on the maps, and stakes set at the corners of the several lots and along the lines of the several streets and roads.

In this condition of affairs, the board of supervisors of the county, in January, or early in February, 1889, assumed jurisdiction over Pacific Avenue as a public highway. On the 8th of February, a petition was received by the board concerning the same, and in due course was acted upon by the board. They received and accepted a deed of a strip of land forty feet wide adjoining it on the west for the entire length thereof, and with that widened the same to one hundred feet, and changed the name thereof to Military Avenue. They procured the necessary right of way, and extended the same southward some two miles to connect with another road, called National Boulevard, and northward to another road, called Nevada Avenue, running through the Soldiers' Home tract, and they ordered that the whole road thus widened and extended be opened and graded, and appointed one of their number, the defendant Davis, a committee to carry the order into effect. Under this order, that portion of the road lying south of this rancho was opened and graded, and the graders entered upon the portion thereof on the rancho, and within the then

inclosures thereof, and graded about one mile thereof. At this stage, they took down the sixty feet of fence which was within the platted road-way on the south boundary of the rancho, and proceeded to take up the fence along the western boundary of the rancho, and moved the same, and replaced it, in as good order and condition as it was before, sixty feet eastward, and along the eastern line of the avenue as it was surveyed, staked, and platted.

During all this time, the plaintiff was living on the rancho, and in full view of the work going on, but made no protest or objection thereto. The supervisor having charge of the work says he heard of no objection on the part of plaintiff until about a mile of the fence had been moved back. This evidence is not contradicted, and oral evidence of all the facts as to the action of the board of supervisors, as herein stated, was received without objection, and no effort was made to contradict it in any particular. It was proved and admitted that up to the time of the removal of the fence no part of the land within the inclosure, and included in Pacific Avenue, had in fact been used as a public highway. The matter of opening and grading the highway having progressed thus far, this action was commenced April 13, 1889. No restraining order was sought or made *pendente lite*, and whether the work has been prosecuted further does not appear.

To our minds, the controlling question in the case is, whether or not there had been an offer and acceptance of dedication of Pacific Avenue to public use as a public highway. The appellant strenuously insists upon the negative of this proposition, and relies chiefly upon the case of *People* v. *Reed,* 81 Cal. 79, in support of his position. But the case now under consideration is very different from that of *People* v. *Reed.* In that case, the plat or map had never been recorded, and for that reason it was expressly held (page 78), " where the right to claim

the street by the public rests upon the map alone, there is no offer to be accepted until the same is filed for record."

It was further held, and we adhere to that ruling in this case, that the mere sale of lots according to an unrecorded map is not such a dedication as makes the public an interested party. It was further held, in substance, and we again repeat, that even the filing of a map, and the recording of the same, is but an offer of dedication of the streets and highways delineated thereon, and that, "in order to constitute a dedication which can be taken advantage of by the public authorities, . . . . the offer of dedication must have been accepted by such authorities, either by user or some formal act of acceptance." (Page 79, and cases there cited.)

And we may make a further addition, which the history of the country now seems to demand, that the acceptance, by user or otherwise, of one or more particular streets or highways shown upon a recorded map will not operate as an acceptance of all or any other of the streets or highways delineated thereon. "Such acceptance must be within a reasonable time after such offer of dedication, and if not accepted, the owner may resume the possession of the property, and thereby revoke his offer." (Page 80, and cases there cited.) That case was decided in Bank, and the principles there laid down, and here affirmed, furnish ample protection to this plaintiff, and to all others whose lands have been platted into streets, lots, and blocks, against any claims of the public to streets and highways of which the offer of dedication has not in some form been accepted by the public authorities. But in the Reed case, as before stated, there was never an offer of dedication, for the reason that the map was never recorded. Some time after the map was made, the land in controversy in that case was actually inclosed, and substantial buildings erected thereon, and the same were occupied for more than twenty years

before there was any attempt made to accept what was claimed to have been, by reason of the making of the map, an offer of dedication. The court held, not only that there had been no offer of dedication to be accepted, but, also, that, even if the making of the map, without recording the same, and the sale of lots according to the same, had been an offer of dedication, there had been a withdrawal of the offer more than twenty years before the attempted acceptance. The facts of that case are so unlike those here developed that the case is not in point. Here the land was sold with the express understanding, in the beginning, that, upon the making of the first deferred payment, the vendee should have the right to, and intended to, subdivide the same into smaller tracts, with streets and roads upon and through the same, and make and record maps thereof, and make sales according to such maps; and the vendor was to, and did, join in conveyances made in pursuance with that intention and understanding. The legal title and possession remained in the vendor as security for the unpaid portion of the purchase-money; but as to possession, he expressly excepted from his reservation thereof such portions of the land as should be appropriated to roads or other improvements.

It is true that in the clause of the contract which provided for the making of surveys, construction of roads, etc., there was a provision that " the inclosures of the party of the first part shall be left practically unimpaired "; but it was expressly proved on the trial, and no attempt made to contradict the evidence, that the work of opening and constructing Pacific Avenue was so conducted as that it did leave the inclosures of plaintiff " practically unimpaired." His fences were kept intact, and the inclosure of the vast tract complete, with the exception of placing without, instead of within, the inclosure the strip of land sixty feet wide along the westerly line of the rancho, which had been " appropriated to "

the road called Pacific Avenue. This appropriation was contemplated by the contract, and this change in the fence can hardly be claimed as a " practical impairment " of his inclosure.

Here, then, was a clear offer of dedication, made by the equitable owner, under authority from and with the full knowledge and consent of the holder of the legal title, and after payment to and receipt by him of the full consideration demanded as a condition precedent to such authority. In the most solemn manner, and by the most solemn acts, he frequently thereafter ratified the offer, and both he and the owner of the equitable title kept the offer open, with no attempt at withdrawal, or intimation or desire to withdraw it, until, a little more than two years after the offer was first made, the public authorities, by their public acts, of which all the world had constructive notice, and of which it is not pretended that plaintiff did not have actual notice, accepted the offer, so far as this one avenue or highway is concerned, — accepted the offer, and assumed jurisdiction and control over it, changed its name, acquired the necessary property to widen and extend it, and by public act did widen and extend it, and actually entered upon and graded a goodly portion of it, under the very eyes of the plaintiff, all without protest or objection from him. It was and is therefore too late for him to withdraw that offer of dedication, so far as this one street or highway is concerned. The public accepted it within a reasonable time, and before any attempt to withdraw it, or to make any use of the property offered other or different from that which was being made when the offer was made matter of public record. Extracts from the records of the board of supervisors are presented in the record, from which it is argued that no formal resolution of acceptance of the offer was ever passed. We do not regard this fact as material, if it be true. Such a resolution would be but evidence of acceptance, but it is not

the only evidence of such an act. Publicly dealing with the property as a public highway in such manner as this was dealt with, widening, extending, and grading it, changing its name, and the like, are acts tending to prove acceptance, and proof of these acts, and of the fact of acceptance, was made orally, without objection or attempt at contradiction. We think they were binding upon plaintiff and his vendees, and that they completed the act of dedication to public use. It does not follow that this would affect, and nothing in the record appears affecting, the question of dedication of any other road or street laid down upon said tract. In view of the conclusion here reached, it is unnecessary to consider any of the other questions discussed by counsel.

Judgment and order affirmed.

Paterson, J., and Works, J., concurred.

Hearing in Bank denied.