[Civ. No. 7789. First Appellate District, Division Two.—April 30, 1931.]

MABEL A. McGINN, Respondent, v. STATE BOARD OF HARBOR COMMISSIONERS et al., Appellants.

Leon E. Morris, Matthew Dooley and Morris, Jaffa & Thompson for Appellants.

Fabius T. Finch for Respondent.

NOURSE, P. J.—Plaintiff sued to restrain the defendants from blockading a portion of Channel Street and from interfering with plaintiff's ingress to and egress from her property situated on the north side of said Channel Street between Seventh Street and Carolina Street in the city and county of San Francisco. The cause was tried before the court and resulted in judgment for the plaintiff as prayed. Defendants, State Board of Harbor Commissioners, appeal upon a bill of exceptions.

There is no dispute as to the facts. Plaintiff's tract of land lies in that portion of the city which was originally under the waters of San Francisco Bay outside the original limits of the city and county of San Francisco. The controversy arises over the status of that portion of Channel Street which runs in front of plaintiff's property. In the early official maps of the city and county this portion of Channel Street was shown as an open public street, but it is conceded that up to the year 1906 it was not used as such and that it was at times covered by water during the periods of high tide. Following the earthquake and fire of 1906 private individuals voluntarily dumped refuse into the channel, filling it up to a point above ordinary street level. Since that time no water has flowed over that portion of the street, but it has continuously been used by the public until the State Board of Harbor Commissioners claimed jurisdiction over it and leased the surface to individuals for the storing of lumber. In this manner plaintiff and all other property owners abutting that portion of the street have been denied the use of the street for any purpose.

Plaintiff's land was not included in the Beach and Water Lot Act of March 26, 1851 (Stats. 1851, p. 307), which defines the San Francisco waterfront, and was beyond those limits as defined by the first official (or Eddy) map of the city, which shows Channel Street running up to the easterly line of Seventh Street only. Because of the uncertainty as to the correct location of the line of high tide, as indicated by the red line upon this Eddy map, additional surveys were made under the direction of the state, and in

1853 (Stats. 1853, p. 219), the legislature authorized the appointment of a commission to sell the state's property lying between the waterfront, as established by the act of 1851, and the high tide land. This commission encountered difficulties because of claimed inaccuracies in the official maps and for the purpose of clearing this situation the legislature by act of 1864 (Stats. 1863–64, p. 460), authorized the appointment of two engineers to make an official map of the city. The map prepared under this statute, which is known as the Brooks and Potter map, was duly approved and accepted by the board of supervisors of the city and county of San Francisco and declared to be the official map on January 30, 1866. This map shows Channel Street as extending up to the easterly line of Seventh Street but does not show any street in the location of the present Channel Street between Seventh and Carolina Streets, the portion of Channel Street west of Seventh which is here in dispute. By the act of March 26, 1868 (Stats. 1867–68, p. 355), the legislature formally dedicated that portion of Channel Street as designated upon the Brooks and Potter map as an open canal for the purpose of drainage and navigation. By this statute the width of said canal from Harrison Street to the northeast line of Seventh Street was fixed at sixty feet, and from the northeasterly line of Seventh Street to the city front it was fixed at 140 feet, and the canal throughout its limit was located in the middle of said Channel Street (to understand the situation, Channel Street as it appeared upon all official maps of the city ran in a general westerly direction from the waterfront near what is termed China Basin to a point located approximately at the northeasterly line of Harris Street, which is now known as Seventh Street, and at that point turned sharply northwest, following the lines of what was known as Mission Creek. From the waterfront to the northeast line of Seventh Street Channel Street was shown as 200 feet in width, and from Seventh Street to Harrison it was shown as 100 feet in width. Thus the act of March 26, 1868, defining a canal running through the middle of this street 140 feet in width along the 200-foot street and 60 feet in width along the 100-foot street left on each side of the defined canal a substantial portion for general street purposes. The controversy here arises over that portion of Channel Street

which is shown on the later maps, to be hereafter noted, which extends the 200-foot strip in a straight line westerly beyond Seventh Street and past block No. 40, in which plaintiff's property is located).

By the act of March 30, 1868 (Stats. 1867–68, p. 716), the legislature created the board of tide land commissioners with authority to make a map of the tide lands laying off those lands in lots and blocks and to sell the lots into private ownership. In accordance with the provisions of this act a new map was prepared, which is designated as the tide land commissioners' map, and which was approved and filed on March 19, 1869. This map shows Channel Street extending on a straight line westerly from the northeast line of Seventh Street at a uniform width of 200 feet, this extension following an express resolution of the tide land commission. Upon this map for the first time appears a definite delineation of the canal in Channel Street running from the bay westerly to Seventh Street at a width of 140 feet and there branching off northwesterly over what is now known as Division Street at a width of 60 feet. Acting under the authority granted by the legislature, the tide land commissioners did sell the beach and water lots delineated upon the tide land commissioners' map, these lots being sold by lot numbers as said lots were delineated upon that map. Plaintiff's predecessors in interest acquired title through these sales from the tide land commissioners.

Subsequent to this dedication on the part of the state the city of San Francisco authorized and approved another map (known as the Humphreys map), on October 26, 1870. This map, like the tide land commissioners' map, also shows Channel Street extending in front of the plaintiff's property with a uniform width of 200 feet and also shows the waterway or canal in Channel Street to Seventh Street, thence branching northwesterly along the present Division Street. By the act of April 1, 1872 (Stats. 1871–72, p. 804), the legislature expressly recognized and approved this Humphreys map and declared that all streets, lanes, alleys and other public places delineated upon that map were thereby dedicated and declared to be open public streets, lanes, alleys and other public places. Upon the same day the legislature enacted a special act (Stats. 1871–72, p. 926), declaring that portion of Channel Street ''delineated as a canal''

on the official map of the city and county to be dedicated as an open canal for the purpose of drainage and navigation, this act again defining the width of the canal to be 140 feet from the waterfront to the northeasterly line of Seventh Street and 60 feet from that point northwesterly to Florida Street.

Subsequent to all these proceedings and on March 15, 1878 (Stats. 1877–78, p. 263), the legislature gave to the Harbor Commissioners jurisdiction over Channel Street and certain other streets ''as far as the ebb and flow of the tide . . . to public use for the purpose of commerce and navigation''. It is under the provisions of this act and under the general provisions of the Political Code, sections 2520 to 2552, giving the appellants control and management of the state property connected with the waterfront of the bay of San Francisco that the appellants claim jurisdiction over the property which the respondent insists is a portion of Channel Street as delineated upon the official maps heretofore mentioned.

It is the theory of the respondent in this case that that portion of Channel Street in front of her property is an open public street under the full jurisdiction of the city and county of San Francisco as such, or if it is not such a public street then it is a public thoroughfare for the purpose of commerce and navigation which cannot be blockaded by any act of the appellants. It is the theory of the appellants that because the tide ebbed and flowed into the portion of Channel Street under discussion intermittently up to the year 1906 when that portion of Channel Street was filled in, the title to the situs rests in the state, and that, though it is no longer available or suitable for uses of commerce or navigation, it is nevertheless property of the state subject to the jurisdiction of the Harbor Commissioners under the wide provisions of the act of 1878 which gave to the Commissioners jurisdiction as far as the ebb and flow of the tide as that was determined at the time of the passage of the act.

There are two complete answers to appellants' argument. First, the ebb and flow of the tide at this particular place had been officially determined by the delineation upon the maps heretofore noted as running up Channel Street to Seventh Street and then branching sharply northwesterly

following the general lines of the old Mission Creek. When therefore, the legislature, by the act of 1878, gave to the State Board of Harbor Commissioners jurisdiction over Channel Street "as far as the ebb and flow of the tide water" it must be assumed that the legislature had this official delineation in mind, and that it acted accordingly.

This is the only reasonable and sound conclusion that can be drawn from the previous acts of the legislature approving the tide land commissioners' map and authorizing and approving the sale of lots in accordance with that map upon which this portion of Channel Street was delineated as an open public street and not as a channel or canal. Thus, if there be any doubt as to the location of the street, that doubt has been created wholly by the acts of the state. Hence that doubt must be resolved against the state under the well settled rule that when the dedicator has caused an uncertainty as to the location and extent of a public way an interpretation most favorable to the public and against the one who has caused the uncertainty must be made.

The state having formally dedicated the land in dispute as an open public street, it made an "actual" acceptance of the dedication by expressly accepting the dedication for and in behalf of the city and county in the act of 1872 (Stats. 1871–72, p. 804), when it transferred to the board of supervisors of the city and county full jurisdiction and control of the land for street purposes. This transfer having been made prior to the adoption of a city charter, the legislature had full and complete authority to accept the dedication in behalf of the city. But, if we are in error in the use of the terms used, it nevertheless follows that at that time the state had full power to make a gift of its land to the city and county; hence, if the transaction is to be treated as a gift rather than as a dedication and acceptance for street purposes, the same conclusion follows: That the state was thereafter precluded from revoking the transfer.

Secondly, the state, as the owner of these tide lands under special grant from the United States, was authorized to plot and sell the land into private ownership. In order to make these sales the tide land commissioners were directed to lay out the land in blocks and lots showing streets, lanes, alleys and other public places and to sell the

land *by lot number.* In these transactions the state through its duly authorized agents, was acting purely in its proprietary capacity. Having authorized the preparation of the map and having approved the map as filed with the streets, lanes and other public places delineated thereon the state stood in the same position as all owners of private property and must, therefore, be deemed to have dedicated to public use all the public highways and places as delineated upon that map. Having immediately sold these lots in accordance with the map the state was without authority thereafter to withdraw from public use any of the streets shown upon the map and hence the act of 1878, if given the interpretation sought by the appellants, would have been ineffectual if it had attempted to withdraw from public use the portion of Channel Street under dispute.

These general principles of law are well settled. In the early case of *Breed* v. *Cunningham,* 2 Cal. 361, the Supreme Court said (p. 368) : ''So firmly has it become established, that where lots are sold as fronting on, or bounded by, a certain space designated in the conveyance as a street, the use of such space as a street, passes as appurtenant to the grant, and vests in the grantee in common with the public the right of way over such street; that such acts on the part of the grantor constitute a dedication of such street, and that he cannot afterwards so sell or dispose of it as to alter or defeat such dedication.'' █ There has not been any disagreement in the rule that when an owner of land dedicates to public use a portion of the land for highway purposes and such dedication has been accepted he may not thereafter revoke the dedication. The seeming disagreement of the authorities is over the question of what constitutes an acceptance of the dedication. It has frequently been said that dedication, like a contract, consists of an offer and acceptance, and that proof of acceptance must be unequivocal. (18 Cor. Jur., p. 72.) █ But it is agreed that acceptance may be actual or implied. Actual and formal acceptance is made by the proper authorities and implied when use has been made of the property by the public for such a length of time as would evidence an intention to accept the property given. (*County of Inyo* v. *Given,* 183 Cal. 415, 418 [191 Pac. 688] ; *Klein* v. *Lewis,* 41 Cal. App. 463, 466 [182 Pac. 789].) Acceptance of the dedica-

tion is also implied when the acts of the dedicator in relation to the public are such as to indicate the acquiescence of the public in the dedication. Here the respondent relies upon both formal and implied acceptance of this portion of Channel Street. Formal acceptance by the express act of the legislature (Stats. 1869–70, p. 890, and Stats. 1871–72, p. 804), wherein the legislature expressly declared the streets and other public places as delineated upon the official map of the city and county of San Francisco (including the tide land commissioners' map of 1869), to be open public streets, implied acceptance by the sale under public legislative authority by specific reference to such map *and the lot number* designated thereon and the acquiescence of the public in such use of the map. ▮ That the sale by lot number, and not by metes and bounds, but by reference to a map which the owner has recorded for that purpose constitutes an acceptance irrevocable as to the purchasers of the portions designated on the maps as public streets has never been disputed. (*San Leandro* v. *Le Breton,* 72 Cal. 170, 175 [13 Pac. 405] ; *Davidow* v. *Griswold,* 23 Cal. App. 188, 192 [137 Pac. 619].; *Elliott* v. *McIntosh,* 41 Cal. App. 763, 767 [183 Pac. 692].)

▮ It being conceded that the state in its proprietary capacity sold the lots to respondent's predecessors through the tide land commissioners authorized under the act of March 30, 1868, it must follow that under the rule of the cases heretofore cited the state could not revoke the dedication of this portion of Channel Street. To do so the state must repudiate its contract with respondent's predecessors and with the other purchasers of lots along the same street. But the state may not impair the obligation of its contract entered into in its proprietary capacity. Such is the rule of the early case of *Fletcher* v. *Peck,* 6 Cranch (U. S.), 87 [3 L. Ed. 179].

▮ Appellants urge that the judgment should be reversed because the respondent failed to prove special injury because of the obstructions in the street. We are not impressed with the argument. The respondent testified that this portion of Channel Street was her only means of ingress to and egress from the property and this testimony is supported by all the official maps of the city and county since the year 1869.

It is also argued that the judgment must be reversed because the court failed to find whether the title to the *locus in quo* was vested in the state of California. We can see no materiality in this issue. If the title to the land in dispute rested in the city and county of San Francisco by grant from the state, or rested in the state because of its original character as tide land, the rights of the parties in this action would be the same. If the court had found the title to be in the state it nevertheless must have granted the injunction upon its finding that the property was an open public street and that the respondent was entitled to use it as such.

Judgment affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 29, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 29, 1931.