[S. F. No. 19137.   In Bank.   May 1, 1956.]

CITY OF OAKLAND, Appellant, v. FRANK A. BURNS et al., Defendants; HERMAN STELZNER et al., Respondents.

J. Kerwin Rooney, Port Attorney, and Edward A. Goggin, Assistant Port Attorney, for Appellant.

Rodney H. Hamblin, Joseph M. Hamblin, Donovan, Stuhr & Martin and Herbert Bartholomew for Respondents.

McCOMB, J.—Plaintiff appeals from a judgment in favor of defendants Stelzner and McCoy in an action for damages and an injunction to restrain the operation by defendants of limousine or bus service from and on the Oakland Municipal Airport (hereinafter called the airport) and their solicitation on the airport of patronage for said services, allegedly in contravention of certain ordinances and regulations of the city and its Board of Port Commissioners (hereinafter called the board) and of the exclusive license and concession granted by the board for said services at the airport to Fialer's Limousines, Inc. (hereinafter called Fialer's).

Plaintiff owns the airport and operates it through the board in its proprietary capacity. Earhart Road is the principal roadway within the airport passing the main buildings, among which are the International Terminal Building, hangars and installations. Earhart Road has been paved and provided with curbings by the board. Since 1927 the main part of this road has been used generally by the public with the knowledge and without objection from the board, which at no time took any action to terminate such general use.

Earhart Road has not been dedicated to the public use in any formal manner. An unnamed side road of Earhart Road along the southwesterly side of the International Terminal Building and a parking and turning area in back of said building has been used since 1947 for ground transportation service for passengers of nonscheduled airlines, and vehicles transporting these passengers for hire had access to this area only by revocable permits of the board and its agents. This area has not been dedicated to public use either formally or by implication.

An agreement was entered into between plaintiff in its proprietary capacity and Fialer's, granting the latter an exclusive license for certain transportation services for hire commencing November 1, 1951. This agreement the trial court found valid except insofar as it purported to accord Fialer's exclusive rights with respect to the part of Earhart Road found to be a public street.

The following ordinances allegedly violated by defendants were found to be valid ordinances regulating the use of airport property held by plaintiff in its proprietary capacity but not applicable to the public part of Earhart Road:

(a) Port Ordinance Number 641, which, among other things, prohibits the use of the airport as a base for the

carrying for hire of passengers or for any other commercial purpose without license from the board or its port manager;

(b) Port Ordinance Number 786 prohibits solicitation of patronage for any taxicab, limousine or airline bus service within the airport or entering the airport for such purpose except when authorized by contract;

(c) Port Ordinance Number 835, which added to Port Ordinance Number 812, section 2.1 prohibiting the operation of any vehicle or bus from the airport unless with the approval of the board and on its conditions and terms;

(d) Section 106 of Council Ordinance Number 3083 C.M.S., which prohibited the operation or leaving of a vehicle on private property without express permission of the owner.

Since November 1, 1951, Fialer's, under agreement with plaintiff, had been the only one entitled to solicit patronage for or to engage in the transportation of persons on or from the airport in airline motor buses, taxicabs or limousines except that defendants might operate on the portion of Earhart Road found by the trial court to be a public street.

Defendant Stelzner provided transportation with one limousine from March 21, 1946, to January 8, 1953. Defendant McCoy provided transportation with one bus from 1947 to January 1953.

Prior to November 1, 1951, defendants used the parking area in back of the International Terminal Building in operating their vehicles. On that date their permits were revoked and thereafter they used only the portion of Earhart Road which the trial court found to be a public street.

Both defendants were duly licensed by the city to operate a limousine carrying passengers for hire on the public streets of the city. On January 23, 1951, defendant McCoy was granted by the Public Utilities Commission a certificate of public convenience and necessity authorizing him to operate a passenger stage service for transportation of nonscheduled airline passengers from the airport to certain points in Oakland, San Francisco and Treasure Island over the most appropriate streets between the points authorized. Defendant McCoy is under a duty to provide ground transportation service in accordance with the certificate obtained.

Within a year prior to the commencement of the action defendants had not committed any of the acts prohibited in the above-mentioned ordinances except on the portion of Earhart Road which the trial court determined to be a public street.

■ Plaintiff contends that no part of Earhart Road is a public street but that in its entirety it is a private road within the airport. This contention is correct. Plaintiff has all power over Earhart Road so far as the same is located on the airport property held by plaintiff in its proprietary capacity. ■ Plaintiff is right in its contention that the plaintiff Board of Port Commissioners lacked power to dedicate by implication any portion of Earhart Road to a public use.

Since the board lacked power to dedicate Earhart Road to a public use in the manner found by the trial court, to wit, by implication, it is unnecessary to consider here whether an implied dedication could be founded in any case upon evidence showing nothing more than a permissive use of a road by the public for access purposes, which the trial court found "dead-ended" within the premises of the owner.

■ It is the general rule that a municipal corporation, unless specifically restricted, may as well make an actual offer of dedication of land owned by it as a private owner (19 Cal.Jur. (1925) § 384, p. 23; cf. *City of Oakland* v. *Oakland Water Front Co.*, 162 Cal. 675, 680 [124 P. 251]) and the manner in which such offer can be made will be the same in both cases (16 Am.Jur. (1938) § 13, p. 356) except insofar as for a municipal corporation, the mode is restricted by law, constitution or charter.

■ It is likewise the rule that the Legislature may prescribe the method by which the power to sell, lease or otherwise dispose of property shall be exercised and, if applicable, the method so provided must be substantially followed. (*Cf. County of San Diego* v. *California Water etc. Co.*, 30 Cal.2d 817 at 823 [2] [186 P.2d 124, 175 A.L.R. 747]; *Miller* v. *McKinnon*, 20 Cal.2d 83 at 88 [124 P.2d 34, 140 A.L.R. 570], where Mr. Justice Carter, in quoting from *Los Angeles Dredging Co.* v. *City of Long Beach*, 210 Cal. 348, 353 [291 P. 839, 71 A.L.R. 161], said: "It is . . . settled that the mode of contracting as prescribed by the municipal charter, is the measure of the power to contract; and a contract made in disregard of the prescribed mode is unenforceable.")

■ The same principle applies to voluntary dedication of municipal property to be a public street.

■ In the instant case, an exclusive mode of opening public streets in the port area is prescribed in section 218 of the Oakland City Charter, which reads:

"Sec. 218. Whenever the Board shall determine that it is necessary to open, close, improve, alter or vacate a public street, or part of a public street within the 'Port Area,' a certified copy of the resolution so determining such necessity shall be filed by the Board in the office of the City Clerk, whereupon the City Manager and the City Council shall initiate and carry to completion the proceedings necessary to effect said proposal."

The word "whenever" indicates that the mode prescribed is exclusive, while the repeated use of the word "shall" in describing the procedure shows that such method is mandatory.

Section 217 of plaintiff's charter prevents it or the council from performing any of the acts mentioned in section 218 without the cooperation of the Board of Port Commissioners.

It is undisputed that Earhart Road has not been opened as a public street in the manner prescribed by section 218, *supra*. If the board had the intention and made the implied offer to dedicate Earhart Road as a public street without substantially following the procedure outlined in section 218 of the charter, such offer would have been invalid and ineffective. ▌ Should it be argued that the creation of an easement of a public street by adverse user by the public as mentioned above without an actual intent or offer to dedicate by plaintiff or any of its agents is not the opening of a public street by the board or plaintiff but an adverse imposing of such burden to which section 218 does not apply, the answer is that such rights would be by prescription and that no title by prescription can be acquired against any municipal corporation or subdivision of the state in land reserved for or devoted to some specific public use. (Civ. Code, § 1007\*; *Henry Cowell Lime & Cement Co.* v. *State*, 18 Cal.2d 169 at 172 [2] [114 P.2d 331]; *Bartholomew* v. *Staheli*, 86 Cal.App.2d 844, 857 [195 P.2d 824] [hearing denied by the Supreme Court]; *Reclamation Dist. No. 833* v. *American Farms Co.*, 209 Cal. 74 at 81 [6] [285 P. 688].)

*Section 1007 of the Civil Code reads in part as follows: ". . . but no possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever dedicated to or owned by any county, city and county, city, irrigation district, public or municipal corporation or any department or agency thereof, shall ever ripen into any title, interest or right against such county, city and county, city, public or municipal corporation, irrigation district, or any department or agency thereof or any agency created or authorized by the Constitution or any law of this State for the administration of any State school, college or university."

The use as an airport of the property here involved is a public use, which excludes the acquisition of rights by prescription. This is evidenced by the fact that section 1238 of the Code of Civil Procedure, subdivision 20, lists airports as one of the "public uses" for which the right of eminent domain may be exercised.

There is likewise no merit in the contention of defendants that plaintiff cannot rely on the foregoing rules of public law in contesting their right to use Earhart Road as a public street because the municipality defends its right to make the exclusive contract with Fialer's on the ground that it operates the airport in a proprietary and not in a governmental capacity.

The city claims the right to make an exclusive transportation contract at the airport because it appears reasonable that the power to acquire and operate a proprietary function implies all necessary power to operate it efficiently. When a governmental entity is authorized to exercise a power purely proprietary, the law leans to the theory that it has full power to perform it in the same efficient manner as a private person would. (*Ex parte Houston,* 93 Okla. Crim. 26 [224 P.2d 281 at 292 [4-7]] ; *Miami Beach Airline Service* v. *Crandon,* 159 Fla. 504 [32 So.2d 153, 155, 172 A.L.R. 1425].)  In the latter case this principle was used to uphold an exclusive contract of the same kind as that of Fialer's.

However, it does not follow from the recognition of this principle that a municipality acting in a proprietary capacity must be allowed the powers necessary to perform it efficiently and to be free from restrictions which impede its efficiency that it must also be free from restricting provisions which do not impede its specific function, like the one restricting the manner in which plaintiff may open public streets over its lands, or that it cannot rely on rules advantageous to it such as the one protecting it against the acquisition of prescriptive rights by third parties.

Section 218 of the Oakland Municipal Charter does not contain any restrictions indicating that it does not apply to opening of streets over lands devoted to a public use of proprietary character, and the rule excluding acquisition of prescriptive rights against municipalities is likewise applicable.

Finally, the certificate of public convenience and necessity of defendant McCoy orders him to conduct his operations

"over and along the most appropriate public streets and highways between the points authorized." Defendant McCoy urges the superior jurisdiction of the Public Utilities Commission over the bus and limousine services on Earhart Road (Cal. Const., art. XII, § 23; Pub. Util. Code, § 1003) on the basis only that Earhart Road is a public street.

The certificate does not contain any finding that Earhart Road is a public street or any decision that the authorized service "from the Municipal Airport" must take place over Earhart Road. ▉ Defendants do not contend that the Public Utilities Commission has any power of regulation over private roads and no constitutional or code provision gives it such power. (*Cf. Kuhn* v. *Ferry & Hensler,* 91 Cal.App.2d 805 [206 P.2d 1] [hearing denied by the Supreme Court].)

*People* v. *County of Marin,* 103 Cal. 223, 230 [37 P. 203, 26 L.R.A. 659], is not here in point. In the cited case the county of Marin had accepted an offer to dedicate, and the court held that the acceptance was valid even though the statutory procedure was not followed. (*People* v. *County of Marin, supra,* p. 229.) However, in the instant case, our decision does not limit the power of the public or the legislative body to accept an offer to dedicate. It merely holds that in dedicating public property there must be substantial compliance with constitutional, statutory and charter provisions. The decision in *People* v. *County of Marin* is not overruled.

The judgment is reversed with directions to the trial court to amend its findings of fact and conclusions of law and to enter a judgment in accordance with the views expressed herein.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority opinion in this case fails to give effect to the rule applicable to common law dedication of public thoroughfares in spite of the numerous authorities announcing it which are controlling here.

Let us look at the facts with regard to Earhart Road as found by the trial court (there is no question of the sufficiency of the evidence to support those findings). The court found: "The Oakland Municipal Airport was first established in the year 1927 upon approximately eight hundred (800) acres of land then constituting a part of the 'Port Area' of the

City of Oakland as defined by the Charter of the City of Oakland. The *roadways* [including Earhart Road] and buildings *hereinafter* described were and are all within said eight hundred (800) acres of land. Since the establishment of the Oakland Municipal Airport, *the principal roadway within said airport* commenced at the intersection of Hegenberger Road, a public highway, with the northeasterly boundary of said airport and ran generally southwesterly into said airport and northwesterly past the principal buildings serving air travelers and then past various hangers and other buildings and installations erected thereon for the use of airlines, aircraft companies and other services related to aviation. Said road was extended northwesterly from time to time and always dead-ended within said airport property. In the year 1935 said road *was designated* 'Earhart Road' *by resolution of the Board of Port Commissioners.* In the year 1947, the Board of Port Commissioners by ordinance dedicated to public use as a public street or highway a road now known as Doolittle Drive which was laid out as a state highway and runs generally parallel with Earhart Road in a northwesterly direction from said Hegenberger Road along and outside of the northeasterly boundary of said airport, and to the City of Alameda. Thereafter access roads were established between Earhart Road at and near its northwesterly end and said Doolittle Drive. Said connecting roads were opened at or about the time Doolittle Drive was laid out and dedicated as a public street. *Said Earhart Road is the primary road serving said airport and the buildings and businesses located thereon.* The International Terminal Building (used as a passenger station for non-scheduled airline passengers) fronts on the southwesterly side of Earhart Road and is situated approximately seven hundred eighty (780) feet southwesterly along Earhart Road from its commencement at Hegenberger Road. . . .

"Said Earhart Road . . . [was] paved and said Earhart Road widened by said Board of Port Commissioners and were at all times maintained by said Board. Said Board caused curbings to be erected along the edges of said roadways and delineated said roadways on maps and charts of the Oakland Municipal Airport kept on file in the office of the Chief Engineer of the Board of Port Commissioners. . . . *Since the year 1927 the portion of Earhart Road hereinafter specifically described has been used generally by the public with*

*the knowledge of and without objection from the Board of Port Commissioners which at no time took any action to terminate such general use."* (Emphasis added.) Thus everything which is ever necessary to common law dedication has occurred. It would be difficult to conceive of a more plain case for the application of the principles of implied common law dedication, yet the majority opinion, while acknowledging the rule of such dedication, concludes that it did not occur because compliance was not had with sections 217 and 218 of the Oakland Charter. Those sections provide nothing more than that dedication for roads may be initiated by resolution of the Board of Port Commissioners and completed by the city council. Section 217 reads: "No franchise shall be granted, no property shall be acquired or sold, no street shall be opened, altered, closed or abandoned, and no sewer, street, or other public improvement shall be located or constructed in the 'Port Area' by the City of Oakland, or the Council thereof, without the approval of the Board." Section 218 reads: "Whenever the Board shall determine that it is necessary to open, close, improve, alter or vacate a public street, or part of a public street within the 'Port Area,' a certified copy of the resolution so determining such necessity shall be filed by the Board in the office of the City Clerk, whereupon the City Manager and the City Council shall initiate and carry to completion the proceedings necessary to effect said proposal." (Oakland City Charter, §§ 217, 218.)

First, looking at the law on implied dedication we find the following: A municipal corporation may make a common law dedication of its property for a street the same as private owners. It is said: "A municipality may itself dedicate property, unless specially restricted, as may the state. Likewise towns, and school authorities, have been held to have this power." (McQuillin, Municipal Corporations (3d ed.), § 33.14.) (See 16 Am.Jur., Dedication, § 13; *County of Yolo v. Barney,* 79 Cal. 375 [21 P. 833, 12 Am.St.Rep. 152].) Here there has been more than a mere offer to dedicate contrary to the intimation of the majority opinion. The dedication is an accomplished fact by reason of the various things found by the trial court. Nor is the part of the rule that a municipality may dedicate its property unless restricted by law, applicable, because the land is of a character which may be dedicated and section 218 is not such a restriction. It only provides one way in which a dedication may be made.

The majority argues, however, that section 218 is the sole method by which there may be a dedication by the city. That section merely says that the Board of Port Commissioners shall determine by resolution when it is necessary to "open" a street and the city council proceeds from there on. There are several reasons why that section does not prevent the instant common law dedication. It does not purport to exclude such dedication and at most is merely one method by which it may be accomplished. It cannot be said to be a limitation on the *power* of a city to dedicate its property, as reasoned by the majority opinion, for the rule that a statute is the measure of the power of a local governmental agency does not apply to chartered cities. "[B]y accepting the privilege of autonomous rule the city has all powers over municipal affairs, otherwise lawfully exercised, subject only to the *clear and explicit* limitations and restrictions contained in the charter. The charter operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess; and the *enumeration of powers does not constitute an exclusion or limitation. (West Coast Advertising Co.* v. *San Francisco*, 14 Cal.2d 516, 521-522, 525 [95 P.2d 138] and cases cited. . . . As recognized in the West Coast Advertising case, the levy of taxes for city purposes is a municipal affair; the collection, treatment and disposal of city sewage and the making of contracts therefor are likewise municipal affairs (*Loop Lumber Co.* v. *Van Loben Sels*, 173 Cal. 228, 232 [159 P. 600]), and *neither may be held to be circumscribed except as expressly limited* by the charter provisions. *All rules of statutory construction as applied to charter provisions* . . . are subordinate to this controlling principle. The former guide—that municipalities have only the powers conferred and those necessarily incident thereto. . . . A construction in favor of the exercise of the power and against the existence of any limitation or restriction thereon which is not *expressly* stated in the charter is clearly indicated. So guided, reason dictates that the full exercise of the power is permitted except as *clearly and explicitly* curtailed. Thus in construing the city's charter a restriction on the exercise of municipal power may not be implied." (Emphasis added; *City of Grass Valley* v. *Walkinshaw*, 34 Cal.2d 595, 598-599 [212 P.2d 894].) Thus in the instant case sections 217 and 218 do not *clearly or explicitly* prohibit the city from making

a common law dedication of streets. They deal only with the distribution of powers as between the Board of Port Commissioners and the city council. The board must approve before the council may establish a street. The board may express its approval by resolution but that is only the formal way of expressing it; it does not exclude the informal method embodied in common law dedication which may occur when the requisite conduct on the part of the city occurs as is found here and such dedication may result when the formal proceedings for dedication are defective. As said in *People* v. *County of Marin,* 103 Cal. 223, 229 [37 P. 203, 26 L.R.A. 659]: "That the general public used the road as a public highway is established by the evidence beyond reasonable doubt. It is said that all of this testimony fails to establish a *statutory* dedication of the highway. This may be conceded, *but 'in many instances a dedication invalid as a statutory one will be a good common-law dedication.'* (Elliott on Roads and Streets, 85, 86.)" (Emphasis added.) And it is said: "An incomplete or defective statutory dedication or an ineffectual attempt to make a statutory dedication will, when accepted by the public or when rights are acquired under it by third persons, operate as a common-law dedication." (16 Am.Jur., Dedication, § 52.) This is further established by the many cases that hold that although an acceptance of the street by the municipality or other government agency is necessary to complete a dedication, yet this may be shown by conduct by the agency such as was found in this case even though the statutory procedure for acceptance was not followed. (*People* v. *County of Marin, supra,* 103 Cal. 223; *McGinn* v. *State Board of Harbor Comrs.,* 113 Cal.App. 695, 703-704 [299 P. 100]; *Fitzgerald* v. *Smith,* 94 Cal.App. 480 [271 P. 507]; *County of Sacramento* v. *Lauszus,* 70 Cal.App. 2d 639 [161 P.2d 460]; *Richardson* v. *O'Hanrahan,* 83 Cal. App. 415 [256 P. 1103]; *San Francisco Sulphur Co.* v. *County of Contra Costa,* 207 Cal. 1, 6 [276 P. 570]; *St. John* v. *King,* 130 Cal.App. 356 [20 P.2d 123].) It is said in the Marin County case, *supra,* where the county board of supervisors declared a road to be a public one: "[A]lthough the proceeding *was not accompanied by all the forms required by the statute to constitute it a highway in a statutory sense, still it was evidence of an acceptance by the board for the public as such highway*; which evidence, coupled with its uses for a highway, and its improvement as such by public authority, is ample to support an acceptance." (Emphasis added;

*People* v. *County of Marin, supra,* 103 Cal. 223, 230.) In *San Francisco Sulphur Co.* v. *County of Contra Costa, supra,* 207 Cal. 1, 5, a subdivision map showing streets was recorded by the owner of the property but was not formally accepted by the city, yet the court held that merely ordering improvement work done was sufficient implied acceptance to constitute a dedication, stating: ''We next pass to the contention that the improvements were made upon property not in fact public thoroughfares because not dedicated to the public use. We have no hesitancy whatever in holding that under the allegations of said complaint appellant is in no position to attack the sufficiency of the evidence to sustain the action of the board of supervisors in improving these thoroughfares as public streets. The contention of appellant is that as to some of the subdivisions described in the district, the recorded maps of such subdivisions which named streets and thoroughfares were not accepted by the board of supervisors, but, on the contrary, acceptance had been denied, and that as to others thereof accepted, the acceptance though granted was not indorsed upon the maps. It is plain that the making and recordation of these maps was an offer of dedication to the public of these spaces as thoroughfares and public streets. It is also clear from the complaint that no withdrawal of said offer of dedication has ever been made. *The mere ordering of the work 'done' and the completion thereof by the board of supervisors is, therefore, an implied acceptance of the offer of dedication. Neither party* could thereafter successfully contend that the thoroughfares were anything other than public streets. While it is true that the *statutory proceedings* for express dedication *were not literally complied with,* ample appears to show that an implied acceptance of dedication offer was made by the board. (*Wolfskill* v. *County of Los Angeles,* 86 Cal. 405 [24 P. 1094] ; *People* v. *County of Marin,* 103 Cal. 223, 227 [26 L.R.A. 659, 37 P. 203] ; *Davidow* v. *Griswold,* 23 Cal.App. 188 [137 P. 619].)'' (Emphasis added.) In connection with the cases above quoted from, it should be noted that according to the findings here the board passed a resolution giving Earhart Road its name. Certainly that is substantial compliance with sections 217 and 218 of the charter or at least sufficient to show a common law offer and acceptance of a dedication under the rule stated in the Marin County and San Francisco cases. While words of art, such as that the street is hereby established, were not

used, the resolution shows unquestioned approval by the board of Earhart as a public road.

To reach the conclusion arrived at by the majority, the above cited cases must be overruled. They cannot be distinguished.

The rule for which the majority stands may have more serious effects than are present here. Suppose all the things done by the city here are done on a strip of land owned by the city and in reliance thereon millions of dollars of improvements are erected fronting on it. It would seem inconceivable that this court would hold there was no dedication, would permit the city to erect barriers across the street and stop the flow of traffic thereon rendering valueless the investments in the improvements.

I would affirm the judgment.