[Sac. No. 4134.   In Bank.—February 24, 1930.]

RECLAMATION DISTRICT NUMBER 833 et al., Appellants, v. AMERICAN FARMS COMPANY (a Corporation), Respondent.

George F. Jones, Jerome D. Peters and W. H. Spaulding for Appellants.

George E. Crothers, C. A. S. Frost, Edward F. Treadwell and Treadwell, Van Fleet & Laughlin for Respondent.

SHENK, J.—Appeal by the plaintiffs from a judgment for the defendant in an action to enjoin the drainage of water from the defendant's rice lands through the canals and drainage ditches and over the easements of the plaintiffs.

The plaintiff Reclamation District No. 833 withdrew from the action after its commencement and the action was thereafter prosecuted by the plaintiffs Drainage District No. 100 of Butte County and Butte Creek Drainage District, both of which are duly created, and existing drainage districts under the laws of the state of California. (Stats. 1903, p. 291, as amended; Stats. 1885, p. 204, as amended.) When the word "plaintiffs" is used herein it will refer to the two drainage districts participating in the trial.

The lands within the exterior boundaries of the plaintiffs drainage districts, comprising some 55,000 acres, are devoted mainly to rice culture and are situated in Glenn and Butte Counties northerly from a lowland called Butte sink or basin, which lies within Colusa and Sutter Counties. Butte Creek is a natural watercourse flowing southerly through the lands of Butte Creek Drainage District and around the westerly side of Butte basin and empties into Butte slough, which lies south of the basin and which in turn empties into the Sacramento River.

The defendant owns land comprising about 2,200 acres in Butte County, situated generally easterly from the lands of the plaintiffs and about fourteen miles northeasterly from Butte basin, but which is not included in any drainage or reclamation district. Several natural waterways, which are normally dry during the late summer months and until the winter rains, have their courses through the defendant's lands and join Cherokee canal at a point about 200 feet below the defendant's southerly boundary. From about that point the Cherokee canal runs in a straight line southwesterly toward Butte Creek and Butte basin. It is conceded that the canal has existed for so many years, at least since the eighties, that for the purposes of this controversy it may be considered to be a natural watercourse (see *San Gabriel V. C. Club* v. *County of Los Angeles*, 182 Cal. 392, 397 [9 A. L. R. 1200, 188 Pac. 554]), and it is not questioned that its waters flow into Butte Creek at a point above Butte basin.

Rice culture is a comparatively recent agriculture development in the state of California. Prior to the time when it was commenced in the region involved in this controversy, Butte basin, which each year during the rainy season became flooded by the overflow of water from Butte Creek, had no continuous outlet to the Sacramento River. Except for evaporation and seepage the waters remained in the basin until the increased flow from Butte Creek in the winter season raised the water table so that the waters flowed over the rim of the basin into Butte slough, which carried them to the Sacramento River. No complaint was made by the land owners growing various crops on lands in and bordering the basin until rice was produced on such a scale that the drainage of the irrigation waters from the

rice-fields so enlarged the volume of waters in Butte Creek that a flooding of the basin occurred and damaged and destroyed the unharvested bean and other crops of farmers in and around the basin. As a result the growers of general crops in 1919 obtained a judgment in the Superior Court of Colusa County enjoining the rice growers from emptying their drainage waters into Butte basin to the injury of the complaining owners of lands in and near the basin. Consequently the plaintiffs and other districts were formed for the purpose of constructing works to divert the drainage waters to the Sacramento River without injury to neighboring farmers. To accomplish the purposes for which they were organized the districts purchased rights of way and other easements to construct ditches, canals, cuts, weirs, levees, etc. The principal works involved herein are a canal which diverts water from Butte Creek at a point at the upper end of the basin, called Butte Creek drain, and a cut, known as Moulton cut, and appropriate levees at the lower end of the basin designed to drain waters from the basin into Butte slough and on to the Sacramento River. By contract with various gun clubs owning lands in the basin the districts obtained flowage rights over the basin but obligated themselves to maintain a specified level of water in the basin for the benefit of the clubs.

At the time of the former litigation above referred to the defendant was not engaged in the production of rice except in small quantities in 1915 and 1917 and was not a defendant in any of the proceedings nor was its land included within any drainage district. Beginning in the year 1921 the defendant has each year produced rice on a larger scale, ranging in amount from 300 to 675 acres, and intends to continue the production of rice on its land to which, according to the evidence, it is best suited, because, like the other land in that region devoted to rice culture, the subsurface is an impervious stratum of hard-pan. For the purpose of irrigating its rice-fields the defendant has drilled eight deep wells from which, by means of pumps, it has developed a flow of from 1600 to 1900 gallons a minute for each well. In the rotation of its acreage the defendant operates the number of wells, usually two or three, necessary to irrigate the particular portion of its acreage which in that year is planted to rice.

As is well known, rice culture requires that irrigating waters stand on the planted surface throughout the summer months and until the rice has matured and is ready for harvest. The waters are ponded on the surface by artificial ditches or "checks." Naturally some of this water seeps through the ditches and otherwise escapes during the irrigating season. Prior to the harvest, in late September and early October, this large volume of irrigating waters is drained off the surface. The seepage and escaping waters during the irrigating season and the drainage waters from the defendant's lands in the drainage or run-off period are discharged into one or more of the several natural waterways on the defendant's lands which empty into Cherokee canal. There is a constant though shallow stream of water about twenty feet wide in the Cherokee canal during the summer months. This flow comprises the seepage waters flowing or discharged into it from the rice-fields along its banks and along the banks of adjacent streams. During the irrigating season there are one or more diversions of water from the Cherokee canal below the defendant's lands. How much, if any, of these seepage waters ultimately reach Butte Creek or Butte basin is not shown. During the run-off season, however, it appears that no diversions for irrigating purposes are made, but that all rice growers are engaged in draining the irrigating waters from their fields and that the stream of water in the canal at this period is largely increased and flows into Butte Creek and a certain proportion of it is diverted through Butte Creek drain into Butte basin. It was in evidence that the amount of water which escaped from the defendant's lands during the irrigating season varied from two to four second-feet and that during the run-off period the volume of water flowing from the defendant's property was from six to ten second-feet.

The trial court found that "the portion of said water which is not consumed in such irrigation is drained upon defendant's said land into natural and ancient watercourses only to the extent necessary in the proper, reasonable and careful irrigation of said land, and without flowage or seepage upon any property of plaintiffs and without seepage or flowage out of the natural channels of said ancient watercourses"; that there is no evidence that any of the waters drained from the defendant's lands "ever reached any of the

canals, works or easements of the plaintiffs," and that they "could only reach the same by being artificially diverted by the plaintiffs . . . "; that the defendant "intends to continue to drain said irrigation water from its rice land into said natural watercourses, but does not threaten to drain the same into any canals, ditches or easements of the plaintiff districts, and there is no evidence showing that said water has ever in any way damaged said right of way or easements of plaintiffs, or that the same will in any way damage or injure the same, and it is untrue that, if the same should continue, it will ripen into any easement or right against the plaintiffs." The court accordingly concluded that the plaintiffs were not entitled to any relief.

The main contention of the appellants is that the findings of the court are unsupported by and are contrary to the evidence.

There was no direct oral evidence that any of the water drained into the natural watercourses on the defendant's land ever reached the works of the plaintiffs. The reason for this lack of proof is obvious because of the commingling of such drainage waters with like waters of other rice growers farther down the canal and the impossibility of identifying one flow of water from another. The most that could be said by the experts produced on behalf of the plaintiffs was that they "believed" or were of the "opinion" that some of the defendant's drainage water found its way to the plaintiffs' works fifteen or more miles below. This opinion evidence was necessarily based on physical facts. That is to say, if it was shown that more water was turned into the watercourses on the defendant's land than could seep away or evaporate before it reached the plaintiffs' works and there was no other outlet, the conclusion based on the law of nature would be that the defendant's drainage water passed to and through the plaintiffs' works. The finding of the court that there was no evidence that any of the waters drained from the defendant's land "ever reached any of the canals, works or easements of the plaintiffs" would seem, therefore, to be contrary to the physical facts. But as bearing upon the plaintiffs' right to an injunction, this finding must be considered in conjunction with the further finding, conclusively established by the evidence, that such drainage waters could reach the plaintiffs'

works, if they did at all, only by the artificial diversion thereof by the plaintiffs themselves.

It is well settled that one who contributes to a damage cannot escape liability because his proportional contribution to the result may not be accurately measured. (*Learned* v. *Castle,* 78 Cal. 454 [18 Pac. 872, 21 Pac. 11]; *People* v. *Gold Run D. & M. Co.,* 66 Cal. 138 [56 Am. Rep. 80, 4 Pac. 1152].) But before an injunction be authorized some damage must be shown, and the finding of the court that there is no evidence showing that the defendant's drainage water has in any way damaged the plaintiffs' works or property is supported by the record.

It is claimed, however, that a continued and increased use by the defendant of said natural watercourses for drainage purposes will so overtax and burden the plaintiffs' properties that there will be a recurrence of the flooding in and injuries to the basin lands for which, under its contracts and the previous injunctive order of the Superior Court of Colusa County, the plaintiffs will be liable. However, no showing is made that any such increase in rice production in this region by which such an increase in the quantity of waters flowing into the basin would be provoked is contemplated or threatened either by the defendant or any other growers of rice. In the absence of any such showing, to which the defendant may be found to be a threatening factor, we think the plaintiffs cannot be said to have established a right to injunctive relief. [5] The maxim *sic utere tuo ut alienum non laedas,* which is incorporated in the statute law of this state (Civ. Code, sec. 3514; see *Green* v. *General Petroleum Corp.,* 205 Cal. 328, [60 A. L. R. 475, 270 Pac. 952]), implies that one may make any use which he pleases of his own so long as he does not injure others. (*Galbreath* v. *Hopkins,* 159 Cal. 297 [113 Pac. 174].)

We deem it unnecessary to enter upon a discussion of the principles relating to trespass, negligence or nuisance. Upon any theory it is clear that as between the parties to this controversy the defendant, in the reasonable enjoyment of its own land, may use the natural waterways on its property as a conduit for the discharge of the rice drainage waters. (See 26 Cal. Jur., p. 143, and cases cited.) That some of those waters may pass through or over the works of

plaintiffs is due to the fact that the plaintiffs have voluntarily come to those points and diverted the water, and the fact that by those voluntary diversions some of the waters may flow over the basin, from the present showing at least, may as well be a benefit as a detriment to the plaintiffs. In the absence of any showing of injury or threatened injury, we conclude that to enjoin the defendant from any reasonable use of the watercourses on its land whereby as a consequence its rice drainage waters seep or flow down to and through the works and easements of the plaintiffs would be unduly to restrict the reasonable use to which the defendant is entitled. Whether the result would be otherwise were injury or threatened injury shown is not a question presented nor decided on this appeal.

The plaintiffs are not entitled to injunctive relief on the theory that the defendant's use of its works may ripen into an easement. The plaintiffs are public corporations and private rights may not be acquired by prescription in or to property owned by them which is devoted to a public use. (*Central Pacific Co.* v. *Droge,* 171 Cal. 32, 40 [151 Pac. 663]; *Patton* v. *City of Los Angeles,* 169 Cal. 521 [147 Pac. 141]; *County of Placer* v. *Lake Tahoe Ry. Co.,* 58 Cal. App. 764, 783 [209 Pac. 900]; *Martin* v. *City of Stockton,* 39 Cal. App. 552 [179 Pac. 894].)

The trial court's finding that there was no evidence of actual or threatened injury is sustained by the evidence and fully supports the judgment herein.

The judgment is affirmed.

Richards, J., Seawell, J., Curtis, J., Langdon, J., and Preston, J., concurred.

Rehearing denied.

All the Justices concurred.