[Civ. No. 11613.   First Dist., Div. One.   Oct. 23, 1941.]

CITY OF OAKLAND, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub and W. H. Spaulding for Appellant.

F. Bert Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Respondent.

WARD, J.—This is an appeal by defendant company from a judgment against it and in favor of plaintiff city of Oakland, for $3,980.43, damages to public library books contained in the basement of a building, the ground floor and basement of which were occupied as an annex to the Oakland

Public Library. The owner of the building is also named as a defendant but the trial court gave judgment in his favor.

The upper floors of the building in which the city of Oakland maintained the library consisted of apartments leased to the manager thereof by the owner of the property. The library was heated by means of gas under the control of respondent; the apartments, by steam delivered to the building by appellant, through a valve at a meter in the basement, from the main supply line of the company located in the street. By means of this valve the supply of steam going into the building could be regulated or disconnected. From the testimony of the steam engineer of appellant it appeared that only in an emergency was anyone but a company employee permitted to shut off the steam by the use of this valve. Beyond the valve the steam system, the property of the owner of the building, passed through the basement. Its course included several right angle turns and a house valve operated by means of a rod or mechanical device extending to the quarters of the manager of the apartments on the second floor. The break in the system, resulting in damage by steam to respondent's books, occurred at one of the elbows between the house valve and the valve of the company at its meter. It appears that steam going into the building could be shut off not only by means of the company valve at the meter, but by one in a manhole ''in the middle of the block.''

On the morning of the occurrence of the damage the manager of the apartments turned on the steam at around six o'clock by means of the device in his quarters. He immediately noticed the roar of escaping steam, and rushed to the basement to turn off the valve near the meter. He was, however, unable to reach it on account of the collected steam. He communicated by telephone with appellant company, and a night service man responded, but he too was unable to enter the basement due to the heat. He made no attempt to turn off the valve in the main in the street, explaining that such was not his duty, and that further trouble might result from such action. Neither did he telephone his employer for help, but drove back to headquarters and there reported the matter. The company then communicated by telephone with one of its steam service employees, who there-

upon walked from his home, some five blocks away, to the scene of the trouble. Unable to reach the valve at the meter, after a delay in obtaining a wrench he turned off the main valve in the manhole in the street, which action permitted the steam to clear sufficiently so that the valve in the basement could be reached.

In the first cause of action the complaint alleges that defendant company so negligently and carelessly managed, controlled and regulated the steam and its flow, supply and distribution to said building and into the pipes of the basement as to result in the break in the pipe. In support of this theory plaintiff relied upon the doctrine of *res ipsa loquitur*, calling attention to the fact that the company was charged with the duty of constant inspection of the pipes, and that on this occasion the steam was delivered at high pressure. There is no substantial evidence that the steam pressure was the cause of the break, and no evidence that there was an excessive pressure of steam on the morning of the accident. Further, there is no substantial evidence that an inspection would have indicated a possible break in the pipe. Finally, there is no proof of a continuing duty to inspect the pipes located in the basement which had been in service for a period of approximately twenty-six years. Appellant company did not have exclusive control and management of the pipe system; and since the damage to the books was primarily due to a break therein, the doctrine of *res ipsa loquitur* is inapplicable to the facts of this case. The trial court made a direct finding that the owner of the building did not have the management and control of the steam pipes on the day in question.

The evidence is sufficient to support the claim of respondent that there was an obligation on the part of appellant, when informed that steam was escaping in the basement, to shut off the supply. The reasonableness of appellant's procedure, and whether there was an inexcusable delay on the part of its employees in shutting off the steam, were factual matters for the trial court to decide. Substantial evidence heretofore related appears to uphold the court's conclusion in this respect. As a reviewing court we may not interfere.

Appellant sought to introduce evidence to the effect that until the accident here involved, in over twenty-four

years there had never been a break, leak or accident in a consumer's premises requiring the services of an expert steam man, or necessitating the turning off of steam, by the use of the manhole valve, to cut off its flow into such premises; nor, during such period, had there been any break, leak or accident whatsoever in any consumer's premises where the valve at the meter could not be reached by one familiar with its location, and that such valves were no more and no less accessible than that on the premises in question.

It is the rule in this state that evidence of previous accidents similar in character and not too remote in point of time may be admitted to charge one with the duty of anticipating a dangerous condition and of taking appropriate steps to avert the danger. (*McCormick* v. *Great Western Power Co.,* 214 Cal. 658 [8 Pac. (2d) 145, 81 A. L. R. 678]; *Continental Ins. Co. of N. Y.* v. *Pacific Greyhound Lines,* 43 Cal. App. (2d) (Supp.) 877 [111 Pac. (2d) 37]; *Gerberich* v. *Southern Cal. Edison Co.,* 26 Cal. App. (2d) 471 [79 Pac. (2d) 783]; *Wills* v. *Price,* 26 Cal. App. (2d) 338 [79 Pac. (2d) 406].) The converse of that rule, applicable in the absence of previous accidents, has been approved in some jurisdictions (128 A. L. R. 606), but not unreservedly in California. The absence of previous accidents should not and does not have a reasonable tendency to relieve a tort feasor from liability for the invasion of the rights of others or damage resulting therefrom, but such evidence is admissible in meeting a *prima facie* case under the doctrine of *res ipsa loquitur,* or a plaintiff's claim that an instrumentality had previously been used a reasonable number of times and found to be safe. (*Union Oil Co.* v. *Rideout,* 38 Cal. App. 629 [177 Pac. 196]; *Kahn* v. *Triest-Rosenberg Cap Co.,* 139 Cal. 340 [73 Pac. 164].) The operation of an instrumentality for a reasonable period of time under similar circumstances may have a tendency to show that in the ordinary course of things, an accident not having previously occurred, there is no reason to anticipate one. This rule arises upon the theory of probable responsibility. Such evidence would simply be a circumstance to consider with other evidence in the case. However, as previously noted, the doctrine of *res ipsa loquitur* is not applicable in this case. The fact that an accident had not occurred would not assist the trier of the facts in

determining whether defendant's employees had been negligent in shutting off the flow of steam after notification of the breakage in the pipe. (*Lim Ben* v. *Pacific Gas & Elec. Co.*, 101 Cal. App. 174 [281 Pac. 634]; *Carty* v. *Boeseke-Dawe Co.*, 2 Cal. App. 646 [84 Pac. 267].)

The main question on this appeal is the extent of appellant's liability based upon negligence in delaying the shutting off of the steam. Appellant introduced evidence to show that the deleterious effect of steam on book bindings is rapid, resulting generally in complete disintegration. It may be conceded that at least twenty minutes elapsed before the arrival of the night service man at the scene of the trouble. He not only accomplished nothing, and failed to immediately get in touch with appellant by phone, but reported the matter only on his return to the company headquarters. The second employee, besides walking the several blocks between his home and the building in question, neglected to bring with him a suitable tool to shut off the steam supply.

Appellant's position is that damage to the books occurred prior to its notification of the break, and that it was incumbent upon respondent to prove what portion of such damage was due to the former's negligence. In other words, that appellant is liable only for such damage as may have occurred following the time when it ought to have shut off the steam, less such amount of damages thereafter caused by the steam already in the basement.

When several parties successively and independently contribute to a total damage, no recovery may be had unless the evidence shows what part of the damage each caused. (*Wade* v. *Thorsen,* 5 Cal. App. (2d) 706 [43 Pac. (2d) 592].) In *Slater* v. *Pacific American Oil Co.*, 212 Cal. 648, 654, 655 [300 Pac. 31], the court said: "It is only fair, in actions of this character, that the plaintiff be required to produce some evidence from which defendant's proportionate liability might reasonably be deduced. . . . However indefinite the evidence may be as a standard for the measurement of damages, our examination of the record satisfies us that plaintiff sufficiently established that some portion of the oil, salt and other hydrocarbon substances causing the injury to his land had come from the operation of the defendant's wells."

The amount of damages awarded, $3,980.43, approximately equals the sum fixed by one of appellant's witnesses plus the actual cost, subsequent to the accident and previous to the trial, of the repair of some of the books. The judgment is about $725 less than plaintiff prayed for in the complaint, and some $440 less than one of its witnesses testified would be required to repair the damage. Appellant contends that evidence was introduced showing that the air in the basement was 100% humidity in eleven minutes, and that the bindings on the books would have been practically destroyed in that time. In some instances witnesses supporting such claim were less positive upon cross-examination about complete destruction in such period. The trial court could have concluded, and evidently did, as shown by the implied finding, that part of the damage occurred after the time when appellant's duty arose to stop the flow of steam. Appellant having been negligent in performance of that duty was liable in damages.

It is contended that appellant should pay only a portion of the damages. Assuming that some damage was caused to the bindings on the books before the moment when the duty just mentioned arose, it does not appear that the proportionate damages could be fixed accurately. It is interesting to note that of more than 7,000 books, magazines and newspapers contained in the library annex, the bid by appellant for repair was based only upon 2302 volumes. This would indicate that all of the books, etc. did not require re-lettering, re-sewing and re-binding, and that disintegration may not have been complete before notification to appellant of the trouble at the building.

One who contributes to damage cannot escape liability because the proportionate contribution may not be accurately measured. (*Reclamation Dist. No. 833* v. *American Farms Co.,* 209 Cal. 74 [285 Pac. 688]; *Stephani* v. *Abbott,* 137 Cal. App. 510 [30 Pac. (2d) 1033]; *Switzer* v. *Yunt,* 5 Cal. App. (2d) 71 [41 Pac. (2d) 974].) It is incumbent upon the party alleging injury to prove the amount of damages. Respondent sustained that burden in this case. If the damages proven could be reduced proportionately, that burden rested upon appellant. (*Vitagraph, Inc.,* v. *Liberty Theatres Co.,* 197 Cal. 694 [242 Pac. 709]; *Andersen* v. *Rinconada Country Club,* 4 Cal. App. (2d) 197 [40

Pac. (2d) 571].) The record does not show that appellant sustained that burden. (*Konda* v. *Frumpkin,* 90 Cal. App. 384 [265 Pac. 955].) In *Rhodes* v. *Firestone Tire etc. Co.,* 51 Cal. App. 569 [197 Pac. 392], an action primarily based upon the amount due for the *repair* of a car damaged as the result of an automobile collision, the court said (p. 574) : "The reasonable cost of making necessary repairs in such cases as this has been accepted as a proper element in determining the amount recoverable as damages in many other jurisdictions, as has already been pointed out, and we think it proper to accept it as such in the establishment of a *prima facie* admeasurement of damages, subject to the right of the adverse party to apply to it the test as to .whether or not the diminution in value by reason of the injury was less than the repair bill, and if so, to reduce the damages recoverable to equal the sum representing such difference in value."

As far as ascertainable from the record, there is evidence that appellant contributed substantially to the damage, or at least to the aggravation thereof, and that the amount of compensation awarded was "an approximation to accuracy." (*Slater* v. *Pacific American Oil Co., supra.*)

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied November 22, 1941, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1941.