[Civ. No. 16692. Second Dist., Div. Three. June 29, 1949.]

LEA DeCORSEY et al., Appellants, v. PUREX CORPO-
RATION, LTD. (a Corporation), Respondent.

670

Stephen Monteleone, Wellborn, Mitchell, Barrett & Rodi, Vernon Barrett and Owen F. Goodman for Appellants.

Sidney A. Moss, Fulcher & Wynn, Bert W. Henderson and Henry F. Walker for Respondent.

SHINN, P. J.—Plaintiff suffered a severe cut in her right wrist when a half gallon glass bottle of Purex burst while she was unscrewing the metal cap. She brought suit against Purex Corporation, Ltd., manufacturer and bottler of Purex, and Latchford-Marble Glass Company, manufacturer of the bottle. In a jury trial a judgment of nonsuit was entered in favor of Latchford-Marble Glass Company, from which no appeal was taken. Judgment on directed verdict in favor of Purex Corporation was entered, and plaintiff appeals from such judgment.

The sole question on appeal is whether there was sufficient evidence to have justified findings of the jury that Purex Corporation was negligent and that its negligence was a proximate cause of plaintiff's injuries.

About a week before the accident, plaintiff's sister-in-law purchased the bottle of Purex from Fitzsimmons Stores, Ltd., and delivered it to plaintiff's home where it was left in a small cabinet below the sink in the kitchen. Plaintiff removed the bottle from the cabinet, placed it on a bread board underneath a counter, started to unscrew the metal cap, when the bottle burst into many large and small fragments. The unopposed testimony of plaintiff and her sister-in-law was sufficient to prove that the bottle was carefully handled by them. It was shown by the evidence that there are three ways in which such a bottle may be broken, namely, by thermal shock,

internal pressure, or a blow or series of blows. Breakage by thermal shock is accomplished by thrusting the bottle into cold water after its immersion in hot water, and is not to be considered. It was shown by the testimony of expert witnesses based upon experiments with such bottles, that they break under pressures varying from 62 to 172 pounds per square inch, and it was further shown that a sharp blow or several blows are required to break a bottle. Purex normally does not develop a pressure of more than two pounds per square inch except through deterioration over a period of months or through contamination. Exposure to heat or light accelerates decomposition. The metal caps are so designed that they may release pressure of 12 pounds per square inch or more, although there was expert testimony based upon experiments that sometimes pressure was not released until it had reached 35 or 40 pounds per square inch. There was also evidence that Purex, if contaminated with iron particles or certain other substances, deteriorates rapidly, resulting in the formation of gas and increase of internal pressure. Plaintiff's expert witnesses and those of defendants were in agreement that the characteristics of a breaking from internal pressure are quite different from those manifested by breaking by means of a blow. In the former, the base of the bottle, which is normally its weakest part, is shattered; in the latter, if the blow is received on the side of the bottle a percussion cone is produced, evidenced by radiating cracks, and the bottle breaks at that point, leaving the base intact. The bottle in question here had such a percussion cone about 3 inches from the bottom and the base was not broken except for a fraction of an inch into the base at a point below a major break in the side. When the bottle burst, the fragments flew about the kitchen, and the cap and some particles of glass were picked up in an adjoining room. Most of the pieces were collected and preserved, were fastened together with adhesive and the bottle as thus restored was placed in evidence. Some of the parts were missing and a jagged hole remained at the point in the side where the bottle burst into small pieces, the hole being, roughly, 2 inches in size measured from top to bottom, and $3\frac{1}{2}$ inches in its widest part measured from side to side. There was another smaller hole below and to one side of the one described. Witnesses who came to plaintiff's house shortly after the accident testified that particles of glass had been thrown about the kitchen, Purex had been scattered on the walls and floor and one witness testified that there was

Purex and splotches of blood on the ceiling which was 8½ feet high.

Negligence of defendant could have consisted of placing the product on the market in a dangerous condition due to its being contained in a defective bottle, or being under dangerously high pressure, or it could have consisted of both.

It appears from the briefs that the directed verdict was ordered upon the ground that the evidence was insufficient to show that the bottle when in defendant's hands had a defect which would have been discoverable in the exercise of ordinary care, or any defect at all. Plaintiff claims that in this connection she was entitled to the benefit of the rule of res ipsa loquitur to prove negligence in placing the product on the market in a defective bottle. Defendant denies that the rule is applicable under the evidence, and the court so ruled in directing a verdict for defendant. ■ Where a bottle of carbonated beverage explodes in the hands of a retail purchaser, an inference of negligence of the bottler may be drawn if there is evidence that between the time the bottle left the hands of the bottler and came into the hands of the plaintiff it was handled carefully and was not subjected to harmful forces, and if there is also evidence that there were available to the bottler, and in common use, tests by which defects due to imperfection or manufacture or rough use are discoverable. The evidence need not go so far as to eliminate every remote possibility of injury by third persons. (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436] ; *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514 [203 P.2d 522].)

■ Plaintiff attempted to prove that the bottle in question was carefully handled by those who had possession of it after it left the hands of defendant. Fitzsimmons Stores purchased Purex through Market Wholesale Grocers, and not directly from Purex Corporation. There was no evidence at all as to the manner in which the product was handled by Market Wholesale Grocers, or whether accidents had occurred in the course of delivery that might have caused injury to some of the bottles. There was some evidence as to the manner in which cartons of Purex were ordinarily handled by Fitzsimmons Stores. The manager of the grocery department testified that he was present when some deliveries were received and that other persons also handled deliveries; that the cartons were stacked up in the store, were partly opened to exhibit the contents, and that the customers helped themselves. He testified that he had not noticed that any

of the cartons had been opened or disturbed when received. He knew nothing about the bottle in question or the carton in which it was contained, and had no idea who had handled it when it was received or sold. There was no other evidence tending to prove that the bottle was not cracked while it was in the possession of Market Wholesale Grocers or Fitzsimmons Stores.

While there was evidence that exposure to heat or light accelerates the decomposition of Purex, plaintiff was not required to furnish evidence as to the atmospheric conditions in which the bottle was handled at all times after it left defendant's possession. There was evidence that Purex was kept in the salesroom at prevailing temperatures, by Fitzsimmons Stores, and that when plaintiff received the bottle in question she kept it in a cabinet under her sink. The half gallon amber glass bottles are put out by defendant in sealed cardboard cartons containing six bottles and the amber glass also tends to exclude the light. It might have been assumed reasonably that the product was handled in a normal manner by Market Wholesale Grocers to the extent, at least, that it was not exposed to high temperatures. It is manufactured and packaged to meet normal and usual conditions of handling. We think it would have been unreasonable to require plaintiff to prove the absence of some unusual, unexpected conditions that might have exposed the bottle to excessive heat. Under the circumstances rapid deterioration resulting from exposure to excessive heat or light was no more than a remote possibility.

We find it unnecessary to decide whether the incomplete evidence as to the manner in which the Purex was handled after it was bottled would have been sufficient to prove that the bottle probably was not damaged during that time. The sufficiency of plaintiff's evidence, in our opinion, did not require reliance upon the res ipsa loquitur rule. There was evidence from which the jury could properly have determined that the liquid was under abnormal pressure, that this was due to defendant's negligence, that the explosion resulted from the excessive pressure and that it was a proximate cause of the severe injuries sustained by plaintiff.

The manner in which Purex is manufactured was described by defendant's chemist. A specified amount of caustic soda is dropped into a concrete tank and cool water is then added

to make 4,200 gallons of liquid. Liquid chlorin is introduced under the surface of the solution and is absorbed. Certain raw materials are added to keep down the rate of decomposition. The mixture is tested from time to time by a standard process. It is transferred from 4,200 gallon tanks to a 90,000 gallon concrete tank from which the bottles are filled. Only new bottles are used. They are not washed or tested by defendant, but are inspected visually. There was evidence that over a period of nine years an estimated 9,000 bottles of Purex have been put aside ''for a period of 6 months, 8½ or 9 years'' and that none of them has ever been known to explode within a period of six months.

As previously mentioned, a normal pressure of Purex at the time it is marketed is from a fraction of a pound to two pounds per square inch, and the metal tops are designed to release excessive pressure. Plaintiff's expert witness testified that a particle of rust would accelerate reaction from decomposition as much as a thousand fold, and that rust might decompose it in a day or two. He also testified that he had calculated that results such as those described could follow an explosion under a pressure of 40 pounds per square inch. One of defendant's experts testified that when he broke an empty Purex bottle against the edge of a tile sink the pieces flew 6 or 8 feet onto the floor, but that he did not notice any fly upwards. Several tendons in plaintiff's wrist were severed, as well as an artery and the ulna nerve. The surgeon who repaired the lacerations testified that the tendons were not cut sharply, but were macerated, evidently by an object propelled with considerable force. The injury resulted in permanent atrophy of the muscles leading to three of the fingers. The nature of plaintiff's injuries and the manner in which the bottle was shattered and the contents thrown onto the ceiling furnished substantial evidence of the release of a powerful force. The testimony of one of defendant's experts, already mentioned, was to the effect that upon the breaking of a bottle with no internal pressure the fragments would simply fall to the floor and not fly upward. A reasonable inference would have been that the liquid was contaminated by the presence of some foreign substance which caused rapid deterioration and the development of excessive gas. Manifestly, in view of the evidence that defendant did not wash its bottles before using them, the question whether such contamination resulted from any negligent act or omission of Purex Corporation was one for the jury.

There was no evidence from which it could reasonably have been inferred that the bottle was burst through internal pressure alone. There is wide variation in the strength of blown bottles. A single bottle may be much thicker at one point than at others, and as we have said, the capacity to withstand internal pressure was shown by experiments to range from 62 to 172 pounds. Plaintiff's expert made a test of three Purex bottles and they did not burst under pressure of 110 pounds. If full credit was given to the testimony of plaintiff that she handled the bottle carefully, it would have been highly improbable that the bottle was burst solely by internal pressure. All the expert evidence was that it had been broken by a blow. Although plaintiff's expert did not express that opinion, he did not disagree with the testimony of defendant's experts that the bottle, as restored, had the characteristics of one broken by exterior force. But this fact, if it had been established, would not have defeated plaintiff's claim. For reasons to be stated, it was unnecessary for plaintiff to prove that the bottle was or was not defective, or if defective that such condition did or did not contribute to the occurrence of the accident.

If the jury had believed that the bottle was defective when it was received by plaintiff, it would not have been a necessary conclusion that the defective condition was the sole proximate cause of plaintiff's injuries. Negligent acts of several persons, each of which contributes proximately to the occurrence of the accident, or injury, may give rise to liability on the part of all of the actors. One who is guilty of negligent acts which contribute proximately to the occurrence of the accident or injury may not escape liability upon the ground that the acts of others, whether negligent or not, are also contributing causes. Section 439, Restatement, Torts, reads: ''If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.''

It is too well settled to admit of question that ''Liability may be imposed upon a defendant where his negligence is one of several contributing factors, each of which is a proximate cause of the injury.'' (*Westover* v. *City of Los Angeles,* 20 Cal.2d 635 [128 P.2d 350].) Also that the

question of proximate cause is ordinarily one of fact and that the determination of the issue by the jury will be upheld if it expresses a reasonable conclusion drawn from the evidence. (*Smith* v. *Schwartz*, 14 Cal.App.2d 160, 164 [57 P.2d 1386], and cases cited.) Plaintiff was entitled to be compensated for injuries sustained as a proximate cause of defendant's negligence. If the excessive internal pressure was found to have resulted from contamination of the liquid, negligence could have been inferred, and in that event it would have been for the jury to determine the extent of the injuries sustained by plaintiff as the proximate result of such negligence. There was good reason to believe that except for the violence of the explosion the injuries would have been far less severe. It is not necessary that negligence of the defendant, to be actionable, be the sole cause of the damage. There may be other factors which contribute to the extent of the damage. It was said in *City of Oakland* v. *Pacific Gas & E. Co.*, 47 Cal.App. 2d 444, 450 [118 P.2d 328] : ''One who contributes to damage cannot escape liability because the proportionate contribution may not be accurately measured. (*Reclamation Dist. No. 833* v. *American Farms Co.*, 209 Cal. 74 [285 P. 688] ; *Stephani* v. *Abbott*, 137 Cal.App. 510 [30 P.2d 1033] ; *Switzer* v. *Yunt*, 5 Cal.App.2d 71 [41 P.2d 974].) It is incumbent upon the party alleging injury to prove the amount of damages. Respondent sustained that burden in this case. If the damages proven could be reduced proportionately, that burden rested upon appellant. (*Vitagraph, Inc.* v. *Liberty Theatres Co.*, 197 Cal. 694 [242 P. 709] ; *Andersen* v. *Rinconada Country Club*, 4 Cal.App.2d 197 [40 P.2d 571].) ''

 Evidence from which it could have been found that the bottle was under extreme internal pressure and that the severity of plaintiff's injuries was probably due to the fact that the liquid exploded was sufficient to send the case to the jury. Even if it had been believed that the bottle had been cracked before plaintiff received it the jury would have been required to determine whether it would have burst under normal pressure. And if the assumed defective condition of the bottle combined with the excessive pressure caused plaintiff's injuries the burden of segregating the damages due to one cause or the other was upon the defendant. This issue, if made by the evidence, would have been for submission to the jury, under proper instructions. All such questions relate to the issue of proximate cause.

Plaintiff's evidence was sufficient to have supported a verdict in her favor. It was therefore error for the court to direct a verdict in favor of the defendant.

The judgment is reversed.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied July 15, 1949, and respondent's petition for a hearing by the Supreme Court was denied August 25, 1949.