[Civ. No. 19448. Second Dist., Div. Three. Oct. 26, 1953.]

CARL M. BICKHAM, Respondent, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation) et al., Defendants; GOLDEN BEAR OIL COMPANY (a Corporation), Appellant.

Parker, Stanbury, Reese & McGee for Appellant.

James V. Brewer and Frank G. Howe for Respondent.

SHINN, P. J.—Plaintiff sued Southern California Edison Company and Golden Bear Oil Company for injuries sustained through an electric shock suffered while he was employed as a workman on the roof of a building then being constructed by the oil company upon its property.

Plaintiff is an iron worker, and at the time of the injury was in the employ of Soule Steel Company which was constructing the building as an independent contractor under agreement with the oil company. While plaintiff was manipulating a piece of metal sheeting, in the course of installing a roof on the building, he came into contact with high voltage (16,000 volts), uninsulated wires of the Edison Company which extended over the building. This building was on the south side of Washington Boulevard in Los Angeles, and was being erected between two existing buildings of the oil company. The new building was 66 feet wide and on the east side 100 feet deep. The eaves were 18 feet from the ground and the peak of the roof 25 feet. Three power lines extended from a crossarm on a pole in front of the building on Washington Boulevard, over and parallel to the east edge of the roof to another pole on the property. The most easterly wire was 56 inches from the center wire, which was 42 inches from the westerly wire. The distance between the two poles was

151 feet. The crossarm on the street pole was 45 feet above the ground, and that on the other pole 33 feet from the ground. On the street pole was a sign "High Voltage." There was a conflict in the evidence as to the distance between the wires and the roof, but there was evidence that the distance was not over 5 feet and testimony of a workman that he was 5 feet, 9 inches tall and had to stoop to get under the wires. There was a sag in the wires between the two poles. Plaintiff had been engaged in cutting galvanized sheeting on the roof of the old building to prepare for the installation of a gutter between the old and the new buildings. It was his first day on the job. He was standing on a ladder called a "chicken ladder" which was lying on the steel purlins which extended toward the apex of the roof; the ladder had the same pitch as the roof; he was at the southeast corner of the building facing north; a sheet of aluminum 10 feet long and $26\frac{1}{4}$ inches wide was passed up to him from the ground. About $3\frac{1}{2}$ inches on one side was bent over at a right angle. The roof sloped up from east to west, and in attempting to place the sheet on the eave of the roof plaintiff discovered that as it was handed to him, and because of the bend, it was necessary to turn it around end for end, and in doing so the sheet came into contact with the wire, with the result that plaintiff and the sheet of metal were both precipitated to the ground. Plaintiff testified he knew the wires were "hot" but was not going to touch them if he could help it; "the only way I could move the sheet would be to turn it end for end, and as I went to turn the sheet up I momentarily forgot the wires. I had my mind on my work, what I was doing." The wires were those of the Edison Company and it is conceded that the oil company had no right to remove them or change their location.

A demurrer of the Edison Company to plaintiff's complaint was sustained without leave to amend, and judgment of dismissal was entered. Nevertheless, the Edison Company paid plaintiff $11,583, and received a covenant not to prosecute the action further against that company. In a jury trial plaintiff was awarded $8,000 against the oil company. The latter's motion for new trial was denied and the oil company appeals from that judgment.

The issues were: (1) Was the oil company under a duty to furnish plaintiff a safe place in which to work; (2) if so, did it fail in the performance of that duty; (3) if there was a breach of duty was it a proximate cause of the accident;

(4) was plaintiff guilty of negligence as a matter of law; and (5) did plaintiff assume the risk of injury.

With respect to its duty to furnish plaintiff a safe place in which to work appellant does not question the rules relied upon by respondent which we shall notice briefly. In *Martin* v. *Food Machinery Corp.*, 100 Cal.App.2d 244 [223 P.2d 293], the general contractor directed its employees to reinforce a ladder which had been constructed by the defendant corporation. They did so, and it appearing that the ladder was safe, stepped upon it and fell. The plank which broke had knots in it and was cross-grained. Plaintiffs sued the owner of the building and upon the trial the court directed a verdict in favor of the owner corporation. In reversing the judgment it was said (p. 248): "The question as to whether or not the plaintiffs were invitees, under the facts presented, was a question of fact for the jury to determine." (Citing *Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751 [185 P.2d 94]; *Buckingham* v. *San Joaquin Cotton Oil Co.*, 128 Cal.App. 94 [16 P.2d 807].) The court quoted from *Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529, 545 [157 P.2d 57], as follows: "The general rule in that regard is that an owner or occupier of premises, who, by invitation express or implied, whether the invitation is pursuant to a written contract or otherwise, induces, or knowingly permits, a workman to enter the premises for the performance of duties mutually beneficial to both parties, is required to use reasonable care to protect the workman by supplying him with a reasonably safe place in which to work and to furnish and maintain appliances in connection therewith which are reasonably safe for the purposes embraced therein. (*Mayes* v. *Splitdorf Electrical Co.*, 94 N.J.L. 460 [111 A. 10].)"

Plaintiff, as an employee of the contractor was engaged in work which was of mutual advantage to himself and appellant, and was therefore a business licensee, or invitee. (Rest., Torts, §§ 330, 332.) It was appellant's duty to furnish him a safe place in which to work.

Appellant does not contend that the conditions that existed were safe for workmen engaged in installing the roof. It merely says that it did not own, maintain, control, or have any right of control over the power line, and that the sole responsibility for the location and condition of the line was that of the Edison Company. Plaintiff replies that the wires were maintained in violation of General Order No. 95, section II, rule 37, table 1, case No. 6, column E, of the State

Public Utilities Code, and that responsibility for maintaining the wires in violation of the order rested upon the oil company as well as upon the Edison Company. The order of the commission reads in part as follows: "GENERAL ORDER No. 95. SECTION 1—General Provisions. . . . 11. PURPOSE OF RULES. The purpose of these rules is to formulate, for the State of California, uniform requirements for overhead electrical line construction, the application of which will insure adequate service and secure safety to persons engaged in the construction, maintenance, operation or use of overhead electrical lines and to the public in general. . . ." Rule 37 incorporates table I which specifies: "Basic Minimum Allowable Vertical Clearance of Wires Above . . . Buildings. . . . Case No. 6—Vertical clearance above buildings and bridges (or other structures, which do not ordinarily support conductors and on which men can walk) whether attached or unattached. Column E—Supply Conductors and Supply Cables—750-20,000 Volts: 12 feet." Supplement No. 1 to General Order No. 95, effective February 1, 1948, makes the above rule clearly applicable to buildings and does not alter the above requirements. In its brief appellant does not discuss the safety order nor contend that it does not impose a duty upon the owners of buildings as well as upon power companies.

Although appellant had nothing to do with the installation or maintenance of the power line, it brought itself within the requirement of the general order when it undertook to erect a building beneath the power line which would render the continuance of the line within less than 12 feet from the roof of the building a violation of the general order. Until the building was being constructed the location of the power line was not violative of the order; it was the combination of the two that constituted the violation. Upon demand by appellant of the Edison Company, the latter would have been required to change the location of the line. ■ Appellant had a duty to act affirmatively to remedy the condition. By its inaction it could not evade responsibility for the creation and maintenance of a condition which was a violation of law. It is inconceivable that the Edison Company would have refused to comply with the safety order by changing the location of the wires if appellant had requested it to do so.

■ It is well settled that such a violation of law constitutes negligence as a matter of law. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]; *Scalf* v.

*Eicher,* 11 Cal.App.2d 44 [53 P.2d 368]; *Allred* v. *Orth,* 206 Cal. 494 [274 P. 955]; Rest., Torts, § 286.)

█ Appellant contends that plaintiff's actions in handling the sheet of metal constituted an independent, intervening agency which removed any negligence of the defendants as a proximate cause of the accident. This is to say that it was not reasonably foreseeable that workmen engaged in construction work, or persons upon the roofs of buildings, were likely to come into contact with low slung wires. It was said in *Gibson* v. *Garcia,* 96 Cal.App.2d 681, 684, 685 [216 P.2d 119]: "It is well settled that proximate causation is not always arrested by the intervention of an independent force. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate concurring cause for which full liability may be imposed. (*Gerberich* v. *Southern Calif. Edison Co.,* 5 Cal.2d 46 [53 P.2d 948]; *Lacy* v. *Pacific Gas & Electric Co.,* 220 Cal. 97 [29 P.2d 781]; *De Corsey* v. *Purex Corp.,* 92 Cal.App.2d 669, 675 [207 P.2d 616].) ". . . Numerous cases have declared that if the defendant's conduct exposes persons in the class to which plaintiff belongs to a foreseeable risk of injury, and his act or omission contributes substantially to injury of that nature actually occurring, he may be held liable notwithstanding the fact that an unforeseeable independent intervening act is a concurring cause. (Prosser on Torts, pp. 369-372, and cases cited; *Sandel* v. *State,* 115 S.C. 168 [104 S.E. 569, 13 A.L.R. 1268].) As the Supreme Court stated in *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594, 602 [110 P.2d 1044], 'the fact that neither party could reasonably anticipate the occurrence of the other concurrent cause will not shield him from liability so long as his own negligence was one of the causes of the injury. (*Herron* v. *Smith Bros., Inc.,* 116 Cal.App. 518 [2 P.2d 1012]; *Sawdey* v. *Producers' Milk Co.,* 107 Cal.App. 467 [290 P. 684.)' (See, also, *Rodriguez* v. *Savage Transportation Co.,* 77 Cal.App.2d 162, 168-169 [175 P.2d 37].)"

The very purpose of the safety order was the prevention of contact with the wires by those who might be on or near the roofs of buildings. The standard of conduct was set up for the reason that injury from contact with high voltage wires in close proximity to roofs of buildings was an occurrence to be anticipated and guarded against. There was sufficient evidence to justify a finding that appellant's breach of the

safety order was a contributorily proximate cause of plaintiff's injury. (*Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409 [218 P.2d 17].)

In support of its contention that plaintiff was guilty of contributory negligence as a matter of law appellant cites *Benard* v. *Vorlander*, 87 Cal.App.2d 436 [197 P.2d 42] as a case precisely in point. In that case Pacific Gas and Electric Company was furnishing power to the United States Government over a line which had been installed and was maintained by the government on government property. In handling a steel rod, plaintiff, a steel worker, caused the rod to be protruded from the building on which he was working so that it extended 12 or 15 feet from the outer edge of the scaffolding, where it came into contact with the power line of the defendant. Judgment for defendant notwithstanding verdict was affirmed on appeal. One ground of affirmance was that the electric company was not negligent since it did not own or have control of, or a duty to maintain, the power line. The second ground was that plaintiff was shown to have been guilty of contributory negligence as a matter of law. The case obviously is not in point as to the first ground of affirmance. As to the second ground the court said (p. 448) : "He [plaintiff] alleged in his complaint that defendant knew, or in the exercise of ordinary care should have known, that plaintiff would move a rod in the manner in which this one was being moved, and that as a result thereof said rod *could reasonably be expected to come into contact with said wires.* If this be true, then plaintiff, in the exercise of ordinary care, should have known the same thing; and it is apparent that he recognized that fact when he amended his complaint to allege that the rod was 'inadvertently' brought into contact with the wire and while he was 'unmindful' of the current in said wire. But the evidence does not show either of these things; and the trial court said in the opinion which it filed that, on the contrary, the uncontradicted evidence showed that plaintiff 'knowingly, heedlessly, carelessly, recklessly and unnecessarily exposed himself to a notoriously open and obvious danger,' and that by reason thereof he was guilty of contributory negligence as a matter of law, which was a proximate cause of the accident. We agree with this conclusion."

As we have stated, plaintiff testified that he knew the wires carried high voltage, but that in his preoccupation with his work he momentarily forgot that fact. This explanation, accepted by the jury, was sufficient to bring into play the rule

that momentary forgetfulness is not necessarily negligence as a matter of law. Mr. Justice Temple wrote in *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120, 125, 126 [40 P. 108, 48 Am. St.Rep. 114, 28 L.R.A. 596] : ''It is said that, if one was aware of a fact which should have put him upon his guard, he cannot rebut the presumption of contributory negligence by showing that he momentarily forgot it. This is true as a general proposition, but, like all other rules upon this subject, it must have a reasonable construction. To forget is not negligence, unless it shows the want of ordinary care, and it is a question for the jury.'' ▉ It is settled beyond question that if one has knowledge of the existence of a dangerous condition momentary forgetfulness of the danger does not amount to contributory negligence if there is reason to believe that he nevertheless acted with ordinary prudence and caution. (*Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 385 [240 P.2d 580].) Each case rests upon its own facts. (*Andre* v. *Allynn*, 84 Cal.App.2d 347 [190 P.2d 949].) ▉ It was not unreasonable for the jury to conclude that there was insufficient evidence to prove that Bickham was negligent. He was standing upon a ladder on a roofless structure, 18 feet above the ground, receiving metal sheets as they were passed up to him; his movements were necessarily restricted; he had to be careful of his footing and was required to turn the 10-foot metal sheet end for end under difficult conditions. We are aware of no case in which a finding of a jury acquitting plaintiff of contributory negligence under comparable facts was disturbed on appeal. The cases relied upon by appellant on this point were similar to the Benard case. In all of them in which it was held that contributory negligence was established as a matter of law there was some element of disregard of or indifference to a known danger. In none of them was there under consideration an express or implied finding by court or jury that the accident under consideration was due to momentary forgetfulness of the plaintiff. There is no inconsistency between the holding in any of the cited contributory negligence cases and the rule which recognizes that forgetfulness of a known danger may excuse conduct which would otherwise be negligent.

Appellant argues that the evidence conclusively proved that plaintiff assumed the risk of working in proximity to the wires, that he thereby acquiesced in the violation of the safety order and may not complain even though his injuries resulted

proximately from the condition created by the violation. We cannot agree. Such a doctrine would place a premium upon the violation of laws enacted in the public interest. It would retard the growing trend of legislation to regulate dangerous activities in the interest of greater public safety. It was held in *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409, that such violations of law may not be waived. ■ The court said (pp. 430, 431) : ''Where an ordinance is a police regulation, made for the protection of human life, it is an obligation imposed upon the defendant by a salutary police regulation and the doctrine of assumption of the risk does not apply. . . . Public policy requires that duties imposed by statute be discharged and that those who are affected cannot suspend the operation of the law either by waiver or express contract. [Citing cases].'' Although the doctrine of assumption of risk was submitted to the jury under instructions requested by appellant and the jury's implied finding was in favor of respondent, in view of the rule first stated we need not consider the significance of this finding as an answer to the argument on assumption of risk.

■ In the oral argument appellant insisted that if the duty to correct the dangerous condition did not rest upon the electric company, alone, the contractor who was erecting the building should have ceased construction until the condition had been remedied. Again we refer to the Finnegan case and to the authorities cited in support of the court's statement (p. 433) : ''Where the law imposes a definite affirmative duty upon one by reason of his relationship with others, whether as an owner or proprietor of land or chattels or in some other capacity, such person cannot escape liability for a failure to perform the duty thus imposed by entrusting it to an independent contractor.'' Appellant had a duty which it could not ignore nor evade by shifting it to the contractor. If the latter, as well as the electric company, also had a duty to refrain from violating the order, this would not excuse appellant.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied November 20, 1953, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1953.